**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

December 19, 2017

**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**UNITED PARCEL SERVICE, INC.**
**Employer Below, Petitioner**

**vs.)   No. 17-0604**  (BOR Appeal No. 2051843)
　　　　　　　　　　 (Claim No. 2016005970)

**GREG BARKER,**
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner United Parcel Service, Inc., by Jeffrey B. Brannon, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. No response was filed on behalf of Greg Barker.

The issues on appeal are compensability of additional components of the claim and medical treatment. On April 11, 2016, the claims administrator denied authorization for a transposition of the right ulnar nerve and the addition of cubital tunnel syndrome as a compensable component of the claim. The Office of Judges affirmed the claims administrator in its January 31, 2017, Order. The Order was reversed by the Board of Review on June 8, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Barker worked as a delivery driver for United Parcel Service, Inc., for thirty-one years. During the course of his employment, he sustained bilateral carpal tunnel syndrome and a left elbow neuropathy, or cubital tunnel syndrome. Mr. Barker experienced symptoms in his hands and arms beginning in 1998, and he had a compensable injury date of June 25, 1998. Mr. Barker underwent at least three carpal tunnel release surgeries, two on the left and one on the right, as well as a transposition of the ulnar nerve on the left. He was also awarded permanent partial disability benefits.

1

It appears that at some point, Mr. Barker submitted a claim application regarding a new injury to his upper extremities.[1] On December 17, 2015, Carl McComas, M.D., performed electromyography and nerve conduction studies, which were consistent with moderate to severe bilateral carpal tunnel syndrome, left worse than right, and bilateral ulnar neuropathies which were moderate on the right and severe on the left. On February 10, 2016, Dr. Ignatiadis submitted a request to the claims administrator to add right cubital tunnel syndrome as a compensable condition and for authorization to perform a transposition of the right ulnar nerve.[2]

Ronald Fadel, M.D., performed a medical records review as part of a utilization review on March 16, 2016. He noted Mr. Barker reported an onset of pain in his hands in 2003 that he attributed to years of chronic, repetitive use on the job. Mr. Barker had been diagnosed with bilateral carpal tunnel syndrome and left cubital tunnel syndrome. Dr. Fadel noted his opinion was sought regarding the reasonableness and necessity of bilateral carpal tunnel releases and right cubital tunnel release. In Dr. Fadel's opinion, the main issue was the causation of the compensable conditions. He opined that because the left carpal tunnel syndrome had already been accepted as compensable and there was an absence of other risk factors, the right carpal tunnel syndrome should also be held compensable. He noted that cubital tunnel syndrome is generally related to direct trauma to the cubital tunnel or circumstances in which patients experience prolonged periods of direct pressure to the cubital tunnel. Dr. Fadel recommended approval of the requested surgery for the recurrent severe carpal tunnel syndrome on the left and the acceptance of right carpal tunnel syndrome as a compensable condition. He was not provided a job description and was unable to render an opinion regarding the causation of the cubital tunnel syndrome without one. But he recommended a neurology consultation if there were disagreeing conclusions regarding the causation of the cubital tunnel syndrome. He recommended denial of the alleged cubital tunnel syndrome pending the neurology consultation. The bilateral carpal tunnel syndrome was accepted as compensable, and Mr. Barker underwent bilateral carpal tunnel releases.

Dr. Fadel issued an addendum to his report on March 20, 2016, after reviewing Mr. Barker's job description. Dr. Fadel opined that he did not find any of the required job duties compatible for producing direct or chronic low grade trauma to the cubital tunnel. Based on his report, the claims administrator denied Dr. Ignatiadis's request to add cubital tunnel syndrome as a compensable condition and his request for authorization to perform a transposition of the right ulnar nerve. On May 15, 2016, Mr. Barker stated that in his opinion there were no legitimate grounds for the denial of the addition of right ulnar nerve as a compensable condition or for the denial of the transposition of the right ulnar nerve. It was illogical at best and criminal at worst for the claims administrator to deny the compensability of the right ulnar nerve when the left ulnar nerve was deemed compensable in 2003.

On November 25, 2016, Mr. Barker wrote a letter to the Office of Judges detailing his job duties and his objection to the use of the reports of Prasadarao Mukkamala, M.D., and Dr. Fadel in deciding his case. He did not understand how his left cubital tunnel syndrome was considered

---

[1] The Employee's and Physician's Report of Occupational Injury is not in the evidentiary record.
[2] Dr. Ignatiadis's request is not in the evidentiary record.

work-related in 2001, but his right cubital tunnel syndrome was not considered work-related in 2016. He had surgery on his left elbow first because it was worse. His right elbow has now degenerated to a point where he needs the surgery. The need for the surgery is due to his work.

The Office of Judges affirmed the claims administrator's denial of the request to add right cubital tunnel syndrome and denial of the request for authorization to perform a transposition of the right ulnar nerve in its January 31, 2017, Order. It noted the request made by Dr. Ignatiadis for authorization of the right cubital tunnel syndrome and for transposition of the right ulnar nerve is not part of the record. According to the claims administrator's denial, the request was made on February 10, 2016. Dr. Fadel reviewed Mr. Barker's job description and opined that the job requirements were not compatible with producing direct or chronic trauma to the cubital tunnel. Dr. Fadel opined that the relationship between Mr. Barker's cubital tunnel syndrome and his work as a delivery driver was speculative at best. Additionally, Dr. Mukkamala diagnosed bilateral carpal tunnel syndrome and opined that Mr. Barker did not require any additional treatment for his claim. The report of Dr. McComas, the treating physician, showed moderate ulnar neuropathy on the left.

The Office of Judges found that even though the circumstances that led to Mr. Barker's left cubital tunnel syndrome being held compensable could have caused his right cubital tunnel syndrome, the nerve conduction studies conducted by Dr. McComas failed to demonstrate a causal connection between right cubital tunnel syndrome and Mr. Barker's employment. The Office of Judges noted that in addition to the record not including a copy of the claims administrator's decision that was being protested, the record also did not include any records or reports from Dr. Ignatiadis or the first report of injury. Therefore, Mr. Barker failed to meet his burden of proof. As such, the claims administrator was correct to deny the addition of right ulnar neuropathy as a compensable condition and correct to deny authorization for the right ulnar transposition.

The Board of Review reversed the Office of Judges' Order on June 8, 2017. It found that the February 10, 2016, request from Dr. Ignatiadis for authorization of the transposition of the right ulnar nerve and the claim application were needed in order for a full and complete development of the facts of the claim. Therefore, it remanded the claim to the Office of Judges with instructions to issue a new time frame Order to allow for the full and complete development of the evidence. The Board of Review also instructed Mr. Barker to submit a copy of the claim application and a copy of Dr. Ignatiadis's February 10, 2016, request into evidence. The Office of Judges was to then consider any new evidence along with the previously considered evidence and affirm, reverse, or modify its January 31, 2017, Order.

After review, we agree with the Board of Review. The claim application and the written request of Dr. Ignatiadis regarding the authorization of the surgery would assist the Office of Judges in making a fully informed decision regarding the compensability of the right cubital tunnel syndrome as well as the reasonableness and necessity of the proposed medical treatment. Neither party is prejudiced by the decision, as both parties will be afforded an opportunity to submit additional evidence.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 19, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4